**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE LIGHTHOUSE INSTITUTE FOR EVANGELISM, INC. d/b/a THE LIGHTHOUSE MISSION, and REVEREND KEVIN BROWN<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF LONG BRANCH, ABRAMS GATTA & FALVO, P.C., PETER S. FALVO, ESQ., EUGENE M. LAVERGNE, ESQ., and JOHN DOES A-Z<br><br>Defendants. | **OPINION**<br>**Civil Action No. 00-3366** |

**Walls, District Judge**

This matter is before the Court on defendant City of Long Branch's motion for summary judgment and plaintiffs Lighthouse Institute for Evangelism and Reverend Ken Brown's (collectively "the Mission" or "plaintiffs") cross-motion for summary judgment on their claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA). The Court heard oral argument on December 7, 2005. Plaintiffs' cross-motion for summary judgment is denied; Long Branch's motion for summary judgment is granted.

**FOR PUBLICATION**

## FACTS AND PROCEDURAL HISTORY[1]

On June 8, 2000, plaintiffs filed a Complaint in Lieu of Prerogative Writ in Monmouth County Law Division. Defendants removed it to this Court. On September 22, 2000, President Clinton signed the RLUIPA into law. Plaintiffs then filed an Amended Verified Complaint on October 23, 2000, which added a claim under RLUIPA. On April 7, 2003 this Court denied Plaintiffs' requests for injunctive relief and summary judgement on its facial challenge to Long Branch's zoning Ordinance 20-6.13 (the "Ordinance"). The Court also granted summary judgment to defendants on the Mission's "as-applied" constitutional claims on ripeness and failure to exhaust administrative remedies grounds. On June 25, 2004, the Third Circuit upheld this Court's decision denying injunctive relief. The parties reinstated the dismissed constitutional claims by consent agreement on July 8, 2004. Plaintiffs filed a Second Amended Complaint on July 26, 2004.

The Mission is a New Jersey nonprofit corporation formed in 1991. Its stated purpose is to administer teachings of the bible to its congregation, operate a ministry school and operate benevolent services and agencies to the community. Compl. at ¶ 1. It currently owns the property at 162 Broadway in Long Branch. Plaintiff Reverend Kevin Brown resides at 162 Broadway and is the Mission's presiding minister. Before moving to 162 Broadway, the Mission operated a soup kitchen across the street at 159 Broadway.

The Property at 162 Broadway in Long Branch ("the Property") is located within a C-1 Commercial District designated by the Ordinance, then amended to Ordinance § 345.30. Under

---

[1] Because the Court is writing only for the parties, it is presumed that the facts and history of this extensively litigated case are well known to all the parties. As such, the court notes that the following exposition of facts is not exhaustive and refers the parties to the several decisions in this case for elaboration.

this Ordinance, a church is not listed as a "permitted use" within a C-1 Commercial District. Section 20-6.13(a)(3) specifically lists other permissible uses which plaintiffs term "assembly," including "Assembly hall, bowling alley, and motion picture theater." Other uses permitted include restaurants, colleges, municipal buildings, parks, playgrounds, health spas, gyms, barber shops, and beauty salons. Plaintiffs applied to use the property as a church, but their application was denied.

In October, 2002, the City of Long Branch passed an amended redevelopment ordinance 47-02 ("Redevelopment Ordinance") pursuant to N.J.S.A. 40A:12A-l, the "Local Redevelopment and Housing Law." Ordinance 47-02 is significant because it officially includes plaintiffs' property, 162 Broadway, Block 283, Lot 9 in the "City of Long Branch Broadway Redevelopment Program."

Under N.J.S.A.. 40A: 12A-4, the City of Long Branch became empowered as the governing body. The City and City Planning Board acted in accordance with this statute and the "Broadway Corridor" which includes plaintiffs property, was declared to be an area in need of rehabilitation, under N.J.S.A. 40A:12A-5. When the ordinance declaring the Broadway Corridor to be subject to a redevelopment plan was passed in October of 2002, plaintiffs did not challenge the Ordinance either as to its constitutionality or it being arbitrary, capricious and unreasonable.

Once the ordinance was adopted pursuant to N.J.S.A. 40A: 12A-7(c), the redevelopment plan superceded "applicable provisions of the development regulations of the municipality or constitutes an overlay zoning district within the redevelopment area. When the redevelopment plan supersedes any provision of the development regulations, the ordinance adopting the redevelopment plan shall contain an explicit amendment to the zoning district map included in the zoning ordinance." N.J.S.A. 40A: 12A-7(c). Neither this Court, not the Third Circuit was

asked to address the constitutionality of this new ordinance.

**Facts Relating to Long Branch**

Plaintiffs contend their application for a permit has been thwarted purposely by Long Branch's Planning Board (the "Board") by deliberately allowing the application to languish. They claim that the Board stalled the application with technical requests, failed to place the application on its agenda when those requests were fulfilled and failed to consider the Mission's request for a waiver of the fee application on the basis of its non-profit status. Plaintiffs also claim that by not granting use, the Board prevented the Mission from obtaining its tax exemption. Furthermore, plaintiffs allege that the Board has "harassed" and "intimidated" both the Mission and Reverend Brown, by issuance of various summonses for alleged code violations.

The Second Amended Complaint states the following claims against Long Branch: (1) Prerogative Writ-Mandamus under New Jersey R.4:69-1, which seeks injunctive and equitable relief, as well as compensatory and consequential damages (Count I); (2) violation of the Free Exercise Clause of the First Amendment and of Article I, para. 3 of the New Jersey Constitution under 42 U.S.C. § 1983 (Counts II-III); (3) violation of the Establishment Clause of the First Amendment and Article I, section 4 of the New Jersey Constitution under § 1983 (Count IV); (4) violation of the Equal Protection Clause of the Fourteenth Amendment under § 1983 (Count V); (5) violation of substantive Due Process rights under the Fourteenth Amendment and 1983 (Count VI); (6) discriminatory use of zoning power in violation of the First, Fifth and Fourteenth Amendments (Count VII); (7) discriminatory use of zoning power in violation of article I, sections 1, 3, 4, 5, 18 and 20 of the New Jersey Constitution (Count VIII); (8) violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. (Count IX); (9) violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc (Count XIII); (10) statutory and

constitutional challenges to the Redevelopment Ordinance (Count VIV).

On April 7, 2003, this Court dismissed Counts II-IX and XIII of Plaintiff's Amended Complaint, without prejudice, on ripeness grounds and directed plaintiffs to exhaust administrative remedies. The Court incorporates by reference the factual background described in its April 7th Opinion.

Reverend Brown states that after the Court's April 7, 2003 dismissal, he went to City Planner Carl Turner for purposes of determining the administrative review process in light of the new Redevelopment Program. Plaintiffs sought guidance from the Long Branch City Council, which oversees the Redevelopment Program. City Administrator Howard Woolley provided plaintiffs with Long Branch's "Oceanfront-Broadway Redevelopment Program RFQ/RFP" manual.

After reviewing the Request For Qualification/Request For Proposal ("RFQ/RFP") manual, plaintiffs submitted an RFQ application[2] seeking a waiver of the prohibition of church use at 162 Broadway and a designation of plaintiffs as the developer for 162 Broadway. By letter dated December 23, 2003, Long Branch's Special Redevelopment Counsel, Peter A. Buchsbaum, Esq., notified plaintiffs that their RFQ Application had been rejected.

---

[2] The RFQ/RFP application is a two-part process. The first part, the RFQ application, must contain: (1) a Development Team Description identifying the development team members, leader, and their respective roles; and (2) a description of the Team Experience, relating the team's previous experience with development objectives for the sector, and detailing previous projects relevant to the objectives of the sector. The manual also requires for each previous project submitted: project name, description, location, photos/brochures, construction value; year project site plan was approved, year project was completed/received certificate of occupancy, the member's role in development, financing sources, ownership and projects references. The second part, the RFP, is a very detailed process requiring things such as a Project Concept, Conceptual Site Plan, an Acquisition Plan, a Financial Plan, etc. Before being selected to proceed to the RFP, a prospective developer must first satisfy the RFQ requirements.

**FOR PUBLICATION**

Defendants argue that plaintiffs allowed the Redevelopment Ordinance to become effective in October 2002, and approximately a year later, filed for developer status by submitting an application which demanded uses not permitted under the redevelopment ordinance. The application was rejected on December 23, 2003. After plaintiffs' application was rejected, the next step was to appeal to the Mayor and Council, the governing body of a municipality, and request a hearing on the amendment of the Plan to authorize the requested uses. See N.J.S.A. 40A: 12A-7. In accordance with the statute, plaintiffs appealed the rejection on April 19, 2004. Administrative hearings were held before the Long Branch City Council on May 11, 2004. The Council voted unanimously to deny the plaintiffs' request to approve their requested uses and amend the Redevelopment Plan to allow churches.

## DISCUSSION

### I. Standard for Summary Judgment

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 31, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. Pollock v American Tel. & Tel. Long Lines, 794 F.2d 8609, 864 (3d Cir. 1986). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only if the evidence presented would enable a

reasonable jury to return a verdict for the nonmovant. See Anderson, 477 U.S. at 248. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. See id. at 249.

To defeat summary judgment, an issue of fact in dispute must be one which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claims. See Anderson, 477 U.S. at 248. The non-moving party may not defeat summary judgment by simply resting on the argument that the record contains facts sufficient to support his claims. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L.Ed.2d 659 (1995); O'Donnell v. U.S., 891 F.2d 1079, 1082 (3d Cir. 1989). Rather, the non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e). Such affidavits must be based "on personal knowledge," establish "such facts which would be admissible," and "show affirmatively that the affiant is competent to testify in all matters stated therein." Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985); see also 6 J. Moore, W. Taggert & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-290, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968); Gostin v. Nelson, 363 F.2d 371 (3d Cir. 1966).

## II. Issue of Mootness

Long Branch initially suggests that plaintiffs claims regarding the original Ordinance are moot now that the Redevelopment Ordinance has superceded it. However, the original

Ordinance is not mooted here, where plaintiffs seek compensatory damages sustained by the allegedly unconstitutional nature of the ordinance. Nextel West Corp. v. Unity Township, 282 F.3d 257, 262-63 (3d Cir. 2002).

**III. Statutory Challenge (RLUIPA)**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, was passed by Congress in 2000, mainly in response to concerns that land use regulations were increasingly being utilized to discriminate against religious institutions. The RLUIPA, which has withstood numerous constitutional challenges, has two particular provisions at issue in this case. First, the RLUIPA has a substantial burden provision that requires land-use regulations that substantially burden religious exercise to be the least restrictive means of advancing a compelling governmental interest. Second, the Act has a nondiscrimination provision, which prohibits land-use regulations that disfavors religious uses relative to nonreligious uses. Specifically, the Act provides:

> (a) Substantial burdens
> (1) General rule: No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.
> (2) Scope of application: This subsection applies in any case in which--
> (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;
> (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden

> results from a rule of general applicability; or
> (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.
>
> (b) Discrimination and exclusion
> (1) Equal terms: No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
> (2) Nondiscrimination: No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.
> (3) Exclusions and limits: No government shall impose or implement a land use regulation that--
> (A) totally excludes religious assemblies from a jurisdiction; or
> (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

RLUIPA, 42 U.S.C. §2000cc. Plaintiffs have alleged claims under both the substantial burden and nondiscrimination prongs of the RLUIPA. The Court will address both prongs.

*A. Substantial Burden*

To prevail under the substantial burden prong of the RLUIPA, plaintiffs must demonstrate that the regulation at issue actually imposes a substantial burden on religious exercise. This test is not the same as establishing that plaintiffs' use of its land, which amounts to religious exercise and is also a required element, amounts to a substantial burden. Notwithstanding the distinction, plaintiffs contend that establishing any burden on the use of its land is tantamount to a substantial burden. As noted by the Seventh Circuit, this contention does not hold weight. Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003) (hereinafter "C.L.U.B") ("Application of the substantial burden provision to a

regulation inhibiting or constraining any religious exercise, including the use of property for religious purposes, would render meaningless the word 'substantial,' because the slightest obstacle to religious exercise incidental to the regulation of land use--however minor the burden it were to impose-- could then constitute a burden sufficient to trigger RLUIPA's requirement that the regulation advance a compelling governmental interest by the least restrictive means.").

The substantial burden test requires a demonstration of something more, and numerous courts which have addressed the meaning of "substantial burden" have found, and legislative history indicates, that the phrase should be interpreted by reference to the test as outlined by the federal courts in addressing the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb and First Amendment jurisprudence. As such, courts reviewing the history of the test have found that demonstrating substantial burden requires more than a general limitation on free exercise. Rather, the test requires a showing that the burden prevents adherents from conducting or expressing their religious beliefs or causes them to forgo religious precepts. As described by the Third Circuit, a substantial burden is one that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Lighthouse Institute for Evangelism v. City of Long Branch, 100 Fed. Appx. 70 (3d Cir. 2004), citing C.L.U.B., 342 F.3d at 761. A mere inconvenience is not enough to meet the "substantial burden" requirement, nor is it a substantial burden when a law merely "operates so as to make the practice of religious beliefs more expansive." Braunfeld v. Brown, 366 U.S. 599, 605 (1961).

Here, the circumstance that the Ordinance and Redevelopment Ordinance require plaintiffs to find a location outside the narrowly drawn Broadway Redevelopment Zone, simply does not amount to a substantial burden. See C.L.U.B, 342, F.3d at 761. There is evidence which demonstrates that suitable alternative venues are available to the Mission in 90% of the

**FOR PUBLICATION**

rest of the City of Long Branch.[3] Further, as the Third Circuit previously noted, the requirement that the Mission demonstrate substantial burden under section (a) is substantially weakened because it had operated as a soup kitchen at a rented location across the street for many years. Lighthouse, 100 Fed. Appx. at 77. Finally, as Long Branch notes, Reverend Brown has testified in both a hearing before the Long Branch City Council and at his deposition that the Mission could be located elsewhere, including relocation outside of the Broadway Development Zone. These undisputed facts demonstrate that there is no substantial burden to plaintiffs in having to relocate outside the Broadway Redevelopment Zone.

Because there is no substantial burden upon plaintiffs' practice of its religious beliefs, the Court need not address the issue of whether Long Branch had a compelling governmental interest in restricting churches and that the regulations were the least restrictive means of doing this. See RLUIPA, 42 U.S.C. §2000cc(a)(1). However, without needing to reach this issue, the Court nonetheless finds that Long Branch's stated interest in creating an artistic and "dynamic commercial center" in place of what has been a deteriorating downtown is a legitimate and compelling governmental interest. Long Branch seeks to revitalize its downtown district by developing a performing art and artistic center, supported by restaurants, cafes, bars and specialty retail stores. The presence of a church within this limited zone would most likely not contribute to such development. In addition, a state ordinance prohibiting the sale of alcohol within two hundred feet of a religious organization and a local ordinance prohibiting the sale of alcohol within one thousand feet of a religious organization, would further restrict development on the

---

[3] Upon query by the Court at time of oral argument, counsel agreed that Long Branch has approximately 35,000 in population–somewhat larger than Asbury Park and smaller than Atlantic City.

block.[4] For these reasons, Long Branch has a compelling interest in limiting a church within this particular zone.

*B. Nondiscrimination*

The Mission also claims that the Redevelopment Ordinance violates the nondiscrimination section (b) of the RLUIPA. There is a dearth of case law interpreting the nondiscrimination provision of the RLUIPA. Only one circuit court, the Eleventh Circuit, has addressed section (b), and that court read the language of the provision quite literally and expansively by holding that section (b) operates independently from section (a). Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004); see also Konikov v. Orange County, FL, 410 F.3d 1317 (11th Cir. 2005). In other words, the Eleventh Circuit held that regardless of whether the statute at issue failed to impose a substantial burden on the religious practices of the plaintiff, the zoning ordinance could still violate the equal terms provision of section (b) of the RLUIPA. With deference to the Eleventh Circuit, this Court does not agree with that rationale and reads section (b) more narrowly for the following reasons.

As legislative history makes clear and courts have concluded, the RLUIPA was designed to codify the constitutional provision of equal protection in the context of zoning ordinances.

---

[4] The parties dedicated a substantial portion of oral argument to the issue of the state and local laws prohibiting the sale of alcoholic beverages. Of particular concern is the state statute which relates to the issuance of state permits for the sale of alcohol. Plaintiffs argue that the problem of these laws is mooted by their assurance that the Mission would waive the provisions as applied to them. However, the Court is not convinced that such a waiver could even be secured under either law. Moreover, as counsel for Long Branch pointed out, any waiver under the state law could not be done in perpetuity as the law requires license renewal after several years. The effect of such a renewal would essentially provide the Mission with the ability to determine whether liquor licenses could be obtained by potential future business tenants in the Broadway Redevelopment Zone. Counsel for Long Branch also argues, and the Court agrees, that the application of this liquor law to the Mission demonstrates that it is not similarly situated to other assemblies allowed within the zone.

**FOR PUBLICATION**

See Freedom Baptist Church of Delaware Cty. v. Twp. of Middletown, 204 F. Supp. 2d 857, 868 (E.D. Pa. 2002); Ventura County Christian High School v. City of San Buenaventura, 233 F. Supp. 2d 1241, 1246-47 (C.D. Cal. 2002). However, traditional equal protection constitutional principles require a "similarly situated" analysis of comparing land uses. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 447-50 (1985). The Eleventh Circuit altered this standard by applying a "natural perimeter" standard and rejecting the "similarly situated" analysis under Cleburne. Thus, under the Eleventh Circuit's test, it would be virtually impossible to apply zoning laws to houses of worship because people could congregate anywhere and would fall within the "natural perimeter" standard in every case. In essence, this reading would prohibit the zoning restrictions of churches in any location. This was clearly not the intent of Congress. See 146 Cong. Rec. S7776 ("This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.") (joint statement of Sens. Hatch and Kennedy); see also Guru Nanak Sikh Society of Yuba City v. County of Sutter, 326 F. Supp. 2d 1140, 1155 (C.D. Cal. 2003) (holding that plaintiffs must demonstrate that the regulations themselves, as opposed to the way in which they were applied in this particular case, subject churches to "discrimination").

In addition, the Seventh Circuit's rationale in C.L.U.B., which addressed section (a) of the RLUIPA, is applicable to an understanding of section (b) and Congress' intent in passing the law. Specifically, the C.L.U.B. court noted that the costs associated with relocation brought about because of a conflict with high-density urban land use restrictions are not sufficient to state a claim under the RLUIPA because:

> [o]therwise, compliance with RLUIPA would require municipal governments not merely to treat religious land uses on an equal footing with nonreligious land uses, but rather to favor them in the form of an outright exemption from land-use regulations. Unfortunately for Appellants, no such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise.

C.L.U.B, 342, F.3d at 762.

As the Third Circuit recently suggested in this case, parties seeking to prove a violation of Section (b) must identify similarly situated nonsecular assemblies which are treated more favorably than secular institutions, and then identify no rational basis for the distinction related to the municipality's goal. See Lighthouse Institute for Evangelism v. City of Long Branch, 100 Fed. Appx. 70, 77 (3d Cir. 2004); cf. Congregation Kol Ami v. Abington Township, 309 F.3d 120, 125 (3d Cir. 2002). Here, plaintiffs must first demonstrate that the Mission is similarly situated to nonsecular assemblies before they can establish a claim for discrimination. The Court finds that the Mission has failed to meet this burden. As suggested, the presence of a church within the Redevelopment Zone is not similarly situated with nonsecular assemblies because of state and local laws prohibiting the sale of alcohol within a certain distance of churches.

Second, a similarly situated determination cannot focus on all uses with a similar impact being treated alike because "regardless of the fact that such uses may be fundamentally distinct, we would turn zoning law on its head." Kol Ami, 309 F.3d at 139. To say differently, wide latitude under the similarly situated test is a slippery slope because any impact on use that affects a church may also identically impact other nonsecular, nonpermitted uses and subject practically every entity to the similarly situated test. Here, the Mission has indicated in its papers and at oral argument that among its intended uses are a house of worship, staging of religious plays, a commercial store specializing in religious material and a soup kitchen. This combination of intended uses has no similarly situated counterpart in the permitted uses set out by Long Branch's

Redevelopment Plan. While certain aspects of the Mission's intended uses comport with other permitted uses under the Redevelopment Ordinance, no such combination of uses exists to conclude that the Mission is similarly situated to any nonsecular permitted uses either currently in existence or as imagined by the Redevelopment Plan. And even if the Mission can establish that they are similarly situated to other entities or institutions, Long Branch has, as discussed above in the "substantial burden" analysis, provided a compelling interest that is the least restrictive means to that end.[5]

To this end, at least one court construing section (b) has noted that a zoning ordinance that treats most non-secular assemblies on an equal footing as secular assemblies, while giving some preference to non-secular assemblies does not violate the RLUIPA. Petra Presbyterian Church v. Village of Northbrook, 2003 WL 22048089 at *12 (N.D. Ill. Aug. 29, 2003). Specifically, the court in Petra noted that:

> As amended, the zoning code treats religious and non-religious membership organizations on equal terms by excluding both from the I-1 district. Petra claims that churches are treated less favorably than restaurants and bars, which are still allowed in the I-1 district. However, all other non-religious membership organizations are also treated "less favorably" than restaurants and bars, and Petra has not cited any authority indicating either that restaurants and bars are "similarly situated" assembly uses or *that this is sufficient to constitute a violation of RLUIPA*. See Ventura County Christian High Sch., 233 F. Supp. 2d at 1246-47 ("in evaluating plaintiffs claims under either RLUIPA or the Equal Protection Clause of the Fourteenth Amendment, the Court must first inquire as to whether defendants have treated plaintiffs in an unequal manner to similarly situated entities").

---

[5] There remains a question as to the proper test under section (b) once parties have established that similarly situated entities are being treated differently. If section (b) was meant to codify the existing equal protection analysis, then a party need only establish a rational basis for the different treatment. However, if section (b) retains the more strict test of section (a), then parties must demonstrate a compelling interest that is the least restrictive means. The distinction is moot here because as the Court has previously noted, the Redevelopment Ordinance already survives the compelling interest test.

Id. (emphasis added).

As the Court has observed, the Eleventh Circuit's analysis of section (b) apparently creates a standard that improperly replaces the constitutional test for equal protection. A Congressional act of this sort was specifically prohibited by the Supreme Court in City of Boerne v. Flores, 521 U.S. 507, 519 (1997). This problem is especially acute here because a reading that provides an expansive protection of religious institutions under the "natural perimeter" standard would essentially "bar all restrictions on religion [and] would likely extend beyond constitutional mandates, and potentially render the statute unconstitutional." Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston, 250 F. Supp. 2d 961, 993 (N.D. Ill. 2003); see also C.L.U.B, 342, F.3d at 762. In other words, plaintiffs' expansive reading of section (b) and their position that the Mission should be treated more favorably than nonsecular assemblies similarly prohibited from the Redevelopment District raises serious constitutional problems under the Establishment Clause.

The Eleventh Circuit's analysis in Midrash also presumes that to prove a violation of section (b), a plaintiff does not need to demonstrate substantial burden. Such an outcome directly contradicts Congressional intent. See 146 Cong. Rec. S7774-76 (explaining that sections (b)(1) and (b)(2) "enforce the Free Exercise Clause rule against laws that burden religion and are not neutral and generally applicable" and "the party asserting a violation of this Act shall in all cases bear the burden of proof that the governmental action in question constitutes a substantial burden on religious exercise" and finally that Section (b) "directly address[es] some of the more egregious forms of land use regulation, and provide more precise standards than the substantial burden and compelling interest tests"). Given the legislative history, it seems clear that Section (a)'s "substantial burden" test is applicable to the more precise provisions in Section (b). See

Freedom Baptist Church of Delaware, 204 F. Supp. 2d at 861. As such, plaintiffs' failure to demonstrate a substantial burden under Section (a) is fatal to his claims under Section (b).

## IV. Constitutional Claims

### A. *Free Exercise Claim*

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. Amend. I. If a law is "neutral" and "generally applicable" and burdens religious conduct only incidentally, the Free Exercise Clause does not provide plaintiff with a claim. Employment Div. v. Smith, 494 U.S. 872, 879; Tenafly Eruv Assoc., Inc. v. Borough of Tenafly, 309 F.3d 144, 165 (3d Cir. 2002). Much like the Third Circuit's consideration of the facial challenges to the original Ordinance, the Redevelopment Ordinance is properly viewed as a neutral law of applicability because churches are only one of numerous uses which are not permitted. See Cornerstone Bible Church v. City of Hastings, 948 F.2d 464, 472 (8th Cir. 1991) ("Absent evidence of the City's intent to regulate religious worship, the ordinance is properly viewed as a neutral law of general applicability."). Indeed, churches are not even specifically prohibited by the Redevelopment Ordinance, which instead prohibits all uses not specifically listed. In addition, plaintiffs have not proffered any evidence to suggest that the facially neutral Redevelopment Ordinance was exercised in such a way that secularly motivated conduct was exempted while comparable religious conduct was not. See Church of Lukami Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 537 (1993). Notwithstanding the facial neutrality of the Redevelopment Ordinance, strict scrutiny can also apply when it burdens rights protected by the Exercise Clause in conjunction with other constitutional protections such as freedom of association or speech, and equal protection. See Smith, 494 U.S. at 881. As discussed later, such a "hybrid rights" claim fails because plaintiffs'

other constitutional law claims fail.

Because the Redevelopment Ordinance is a neutral law of general applicability, rational basis applies. Long Branch has asserted a valid rational for its exclusion of certain types of businesses, assemblies, and institutions, including churches, from the area where they are attempting artistic and commercial revitalization.

The Court also notes that under prevailing constitutional jurisprudence, the Free Exercise Clause is less protective of religious freedom than the RLUIPA. Compare 42 U.S.C. § 20000cc-(a)(1) (prohibiting government from imposing a substantial burden on religious exercise, even if the burden results from a rule of general applicability, unless the burden furthers a compelling interest and is narrowly tailored) with Smith, 494 U.S. 872 (holding that laws of general applicability that incidentally burden religious conduct do not offend the First Amendment). If plaintiffs' claims can not succeed under RLUIPA, they can not succeed under the Free Exercise Clause. See Charles v. Verhagen, 220 F. Supp. 2d 937, 952 (W.D. Wis. 2002) ("Because plaintiff's claim ... failed under the heightened scrutiny required by [RLUIPA], it cannot succeed under the rational basis standard" applicable to Free Exercise Clause claims). In addition, it is well-established that "[t]he appropriate exercise of judicial power requires that important constitutional issues not be decided unnecessarily where narrower grounds exist for according relief." Communist Party of Ind. v. Whitcomb, 414 U.S. 441, 452 (1974).

Similarly, "New Jersey's Religion Clause, which contains no reference to the 'free exercise' of religion, 'is less pervasive, literally, than the Federal provision,' and therefore [New Jersey courts have] not been impelled to interpret the state constitution more broadly than the federal constitution in cases implicating the establishment of religion." Ran-Dav's County Kosher, Inc. v. State, 129 N.J. 141, 151 (1992). Plaintiffs' federal and state free exercise

**FOR PUBLICATION**

challenges to the Redevelopment Ordinance are dismissed.

*B. Free Speech and Assembly*

It is not clear that zoning ordinances which limit the location of religious institutions should be viewed by the courts as regulating speech potentially protected by the Constitution, or whether they merely serve as a regulation of non-expressive conduct not protected. It is clear that courts have consistently analyzed the constitutionality of zoning regulations limiting the construction of Houses of Worship under the Free Exercise Clause, not the free Speech Clause. See, e.g., City of Boerne v. Flores, 521 U.S. 507, 534 (1997); Messiah Baptist Church v. County of Jefferson, 859 F.2d 820, 823-26 (10th Cir. 1988); Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, 699 F.2d 303, 307-08 (6th Cir.1983). As noted by the Third Circuit "if solely the act of erecting a wall separating the interior of a building from the secular world constituted 'speech,' every religious group that wanted to challenge a zoning regulation preventing them from constructing a house of worship could raise a 'hybrid' rights claim triggering strict scrutiny, a notion so astonishing that we are unaware of any court--or even any law review article--that has suggested it." Tenafly, 309 F.3d at 163 (citations omitted).

The Supreme Court has repeatedly stressed that land use law is one of the bastions of local control, largely free of federal intervention. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981) ("[t]he power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities.... [T]he courts generally have emphasized the breadth of municipal power to control land use...."); see also Izzo v. River Edge, 843 F.2d 765, 769 (3d Cir. 1988) ("Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong."). The Third

**FOR PUBLICATION**

Circuit observes that these cases,

> demonstrate the breadth of a municipality's power to discriminate in the land use context. Indeed, because the purpose of zoning ordinances is to distinguish among uses in order to draft comprehensive municipal plans, a degree of arbitrariness is inevitable. The question presented in these cases is when does a distinction cross the constitutional line. As long as a municipality has a rational basis for distinguishing between uses, and that distinction is related to the municipality's legitimate goals, then federal courts will be reluctant to conclude that the ordinance is improper.

Congregation Kol Ami v. Abington Township, 309 F.3d 120, 136 (3d Cir. 2002).

Hence, any claim regarding a violation of Free Speech and assembly should undergo rational basis review to determine whether the legislation is reasonable and bears a rational relationship to the interest that the city intends to further. See Belle Terre v. Boraas, 416 U.S. 1, 8 (1974). The Third Circuit previously wrote in this case, which is also applicable to the Redevelopment Ordinance,

> [t]he Ordinance in this case is content-neutral because it is not aimed at prohibiting religious speech, but is rather a zoning ordinance which identifies certain uses which advance the City's goal of promoting commercial development in its downtown district." Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986)). Like the ordinance examined in Renton, the omission of churches as a permitted use in the district resulted not from the content of the speech involved, but from the secondary effect (or lack thereof) of their presence, i.e., churches were not identified as promoting commerce. Further, the Mission has not shown that there were no other channels for communication; rather, churches are specifically permitted in other districts and the Mission had been allowed to operate as a church in its rented property in the C-1 district.

Lighthouse Institute for Evangelism v. City of Long Branch, 100 Fed. Appx. 70, 76 (3d Cir. 2004).

Long Branch's Redevelopment Ordinance is neutral and generally applicable. It is undisputed that the Redevelopment Ordinance does not regulate any form of speech on its face. Moreover, the record contains no evidence to suggest that Redevelopment Ordinance was passed

for the purpose of curtailing or controlling the content of expression. The ordinance is content neutral. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (ordinance which "serves purposes unrelated to the content of expression" is considered neutral "even if it has an incidental effect on some speakers or messages but not others"); see also Gascoe, Ltd. v. Newtown Township, 699 F. Supp. 1092, 1095 (E.D. Pa.1988) ("municipality's right to use its zoning power in the public interest is perhaps the paradigm of [a content neutral] restriction").

There is no question that Long Branch has a substantial interest in regulating the use of its land and that its zoning regulations promote that interest. Renton, 475 U.S. at 50 (asserting that "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect'"(citations omitted)). The Redevelopment Ordinance does not burden any more speech than necessary to further those substantial interests. The Mission may freely disseminate its religious message in the Redevelopment Zone, as well as any other zone in Long Branch. The Mission may operate its church in the 90% of the City which permits such a facility. "In sum, because the City has an important governmental interest in regulating land use, and its zoning regulations are unrelated to the suppression of speech and do not burden any more speech than necessary, the challenged ordinance survives intermediate scrutiny." Grace United Methodist Church v. City Of Cheyenne, 427 F.3d 775, 791 (10th Cir. 2005). Plaintiffs have failed to establish a claim for a violation of their freedom of speech or assembly.

Likewise, while it is true that the New Jersey Constitution's provision for speech and assembly are "more sweeping in scope than the language of the First Amendment" State v. Schmid, 84 N.J. 535, 557 (1980), the state's recognition of the expansive rights has not been applied outside of a New Jersey "citizens' right to *entry* of *private* property that has been opened to the public." Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1269 n.37

**FOR PUBLICATION**

(3d Cir. 1992). Any analyses of the allegations regarding the facial and as applied limitations of Long Branch's Redevelopment Ordinance on plaintiffs' freedom of speech and assembly are not made any differently under state law compared to federal law. Plaintiffs fail to establish any federal or state violation of their rights to speech or assembly.

*C. Freedom of Association*

In addition to freedom of speech, the First Amendment also implicitly protects the corresponding freedom to expressive association. Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984) ("we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends"). The First Amendment protects associational and assembly rights in two distinct ways:

> First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.

Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987).

As previously explained, Long Branch's zoning ordinance is content neutral and the Mission provides no evidence that the challenged regulations were motivated by a desire to limit associational rights. Rather, the evidence suggests that the ordinance was passed for the purpose of stimulating the development of an artistic commercial center within a limited geographical zone of downtown Long Branch. In short, the Redevelopment Ordinance does not interfere with the congregation's right to associate with one another. "[A] church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases." Messiah Baptist Church, 859 F.2d at 826. That the

Mission must comply with Long Branch's Redevelopment Ordinance does not violate its right to association nor does the Redevelopment Ordinance violate the Mission's rights to religious speech and assembly.

*D. Equal Protection*

To establish an Equal Protection claim, the Mission must establish, under Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985), that it was not treated like secular assemblies. 473 U.S. at 439 ("all persons similarly situated should be treated alike"). As applied to zoning regulations, the Third Circuit has stated:

> the first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone. If, and only if, the entities are similarly situated, then the city must justify its different treatment of the two, perhaps by citing to the different impact that such entities may have on the asserted goal of the zoning plan.

Kol Ami, 309 F.3d at 137. If two similarly situated uses are treated differently, a land use ordinance will be deemed irrational if the stated interest asserted to justify the different treatment is either illegitimate (an ends focus) or the classification is not rationally related to the interest (a means focus). See Congregation Kol Ami v. Abbington Twp., 2004 WL 1837037, at *17 (E.D. Pa. Aug. 17, 2004).

In essence, the inquiry here is similar to that under section (b) of the RLUIPA; the distinction being that a determination that secular and nonsecular institutions are treated different is subject to strict scrutiny under the RLUIPA. Whereas, equal protection only requires a rational basis for the disparate treatment between the two groups. Plaintiffs cannot establish that similarly situated institutions are permitted as of right under the Redevelopment Ordinance. The Redevelopment Ordinance permits certain uses and prohibits all other uses both secular and non-

**FOR PUBLICATION**

secular. The ordinance applies to an overwhelmingly large number of nonsecular institutions. Long Branch has identified a rational basis for its exclusion of churches in the Redevelopment zone, namely the goal of promoting an artistic commercial development in its downtown district. This rational basis survives both the ends focus and the means focus test of rationality. That is, the classification is rationally related to the goal of promoting a limited arts and commercial center in the City of Long Branch. It is legitimate and rational to meet that end. For these reasons, plaintiffs equal protection claims must be dismissed.

Similarly, "although the equal protection analysis under the New Jersey Constitution differs somewhat from federal standards, the New Jersey Supreme Court has recognized that the two approaches are 'substantially the same' and 'will often yield the same result.'" Sojourner A. ex rel. Y.A. v. New Jersey Dept. of Human Services, 350 N.J.Super. 152, 167 (App. Div. 2002) (quoting Drew Assocs. of NJ, LP v. Travisano, 122 N.J. 249, 259 (1990). It follows then that plaintiffs federal and state law claims are dismissed.

*E. Due Process*

Plaintiffs claim for violation of its substantive due process rights under the fourteenth amendment lacks any merit. Defendants rightly argue that in land use cases, a substantive due process violation can be asserted only if the action can be characterized as shocking the conscience. U.A. Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 398, 402 (3d Cir. 2003) (noting in applying the shocks the conscience standard that it is appropriate to prevent federal courts from acting as "zoning boards of appeals"). Here, plaintiffs have alleged no facts that demonstrate that the conduct of the Long Branch shocks the conscience. Indeed, Long Branch provided plaintiffs a lengthy hearing to consider an amendment to the Redevelopment Ordinance to include churches as an acceptable use. After careful consideration, Long Branch denied the

requested amendment. Plaintiffs merely allege that Long Branch's denial of the amendment and application of the Redevelopment Ordinance is shocking to the conscience. The Court does not agree.

**V. Fair Housing Act Claim**

Although not raised at oral argument, plaintiffs' briefing fails to point to any evidence in the record to demonstrate that Reverend Brown's request for a pastoral residence was treated any differently from any other requests for residence *after* the Redevelopment Ordinance was passed. Plaintiffs point out the existence of future housing in the Redevelopment Zone, but that housing is not along Broadway (that is the commercial zone) which is the zone at issue. Similarly, there is no evidence that there was any discriminatory intent with regard to the city's denial of Reverend Brown's request to live in 162 Broadway. Absent any evidence of "animus against a protected group" LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir. 1995), or discriminatory impact on pastoral residence compared to other residences, Oxford House-Evergreen v. City of Plainfield, 769 F. Supp. 1329, 1343-44 (D.N.J. 1991), a claim under the Fair Housing Act cannot stand.

**V. New Jersey Tort Claims Act**

Because Plaintiff has failed to demonstrate any constitutional violations, the Tort Claims Act claims asserted against City of Long Branch are dismissed.

**FOR PUBLICATION**

## CONCLUSION

Plaintiffs' cross-motion for summary judgment under the RLUIPA is denied, and defendant City of Long Branch's motion for summary judgment is granted. The Complaint is dismissed with prejudice as to the City of Long Branch.

**s/ William H. Walls, U.S.D.J.**