**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE LIGHTHOUSE INSTITUTE FOR EVANGELISM et al., | : : : : **OPINION** |
| Plaintiffs, | : : Civ. No. 00-3366 (WHW) |
| v. | : : |
| THE CITY OF LONG BRANCH et al., | : : |
| Defendants. | : : : : : : |

**Walls, Senior District Judge**

      Plaintiffs, The Lighthouse Institute for Evangelism, Inc. d/b/a The Lighthouse Mission and Reverend Kevin Brown, move for summary judgment on liability. Defendant, the City of Long Branch, does not contest this motion. This motion is granted.

      Defendant moves for summary judgment asking the Court to find that plaintiffs are not entitled to recover damages in this action. The parties were scheduled to appear for oral argument on this motion on April 6, 2010, but counsel for defendant unjustifiably did not appear. Pursuant to Rule 78.1 of the Local Civil Rules, the Court now decides the motion without oral argument. The Court denies defendant's motion for summary judgment and allows plaintiffs to submit evidence of their claimed damages to a jury.

NOT FOR PUBLICATION

## BACKGROUND

**I.     Current Posture of Case**

On November 27, 2007, the Third Circuit held that:

> [Lighthouse] is entitled to summary judgment in its favor because Long Branch has failed to create a genuine issue of material fact as to whether [C-1 Zoning Ordinance 20-6.13] treated religious assemblies or institutions on less than equal terms with non-religious assemblies or institutions that caused equivalent harm to its governmental objectives.  We will therefore remand this claim to the District Court to enter summary judgment for Lighthouse and to determine compensatory damages for the period between Lighthouse's application for waiver as a church and the enactment of the Plan.  The District Court may also, at its discretion, award appropriate attorney fees.

The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 272-73 (3d Cir. 2007).

Defendant now moves for summary judgment asking the Court to find that plaintiffs are not entitled to recover any damages.  Trial is to begin on May 18, 2010.

**II.    Relevant Factual Background**

Lighthouse acquired the property at 162 Broadway (the "Property") on November 8, 1994.  The Property was subject to C-1 Zoning Ordinance 20.6.13 (the "Ordinance"), which allowed properties in the C-1 Commercial District to be used for assemblies but not for churches.  Lighthouse's then-attorney, Peter S. Falvo, and his firm Abrams GATT & Falvo, P.C. (collectively, the "Falvo Defendants"), assisted Lighthouse with the acquisition.

On August 1, 1995, Mr. Falvo, on behalf of Lighthouse, submitted an Application for Development (the "Application") to the City of Long Branch.  (Pl. Opp'n, Ex. A.)  The Application stated: "This is presently a vacant building.  The proposed use is for a soup kitchen, mission, job skills training, counseling center, bible classes and life skills classes.  The

**NOT FOR PUBLICATION**

application seeks to continue its existing use at 159 Broadway at the new location on 162 Broadway." (Id.) The Application also stated: "Applicant seeks a D variance as the proposed use is not permitted in the C-1 zone pursuant to Ordinance Section 20-6.13." (Id.) The form for the Application noted that "all taxes must be current in order for application to be deemed complete." (Id.) Because Plaintiffs were not current on their taxes, they left blank the part of the Application asking whether property taxes had been paid to date.

On August 21, 1995, the City Zoning Board sent Mr. Falvo a letter informing him that the Application "has been deemed incomplete for the following reasons: (1) The application has not been completely filled out; (2) The plans have no title block, date, seal or signature; (3) The surveys are not sealed; (4) Fees have not been submitted." (Def. Br., Ex. J.) The letter concluded by telling Mr. Falvo that: "This is the minimum required to process this application. Until such time as these items have been submitted, it cannot be determined what other information will be necessary." (Id.)

On March 26, 1997, the City issued a Permit to Rev. Brown/Lighthouse Mission to use "1700 sq ft of 1st floor area of existing vacant building as offices for Lighthouse Mission." (Def. Br., Ex. K.) The Permit clarified: "Only office uses will occur at this site – (No church services / soup kitchen / classes / residential uses will be allowed with this permit)." (Id.) The Permit emphasized that "Applicant understands and agrees that if these [latter] uses are anticipated for this site that he will obtain all required approvals prior to beginning operation of said uses at this site." (Id.)

The City sent a letter to Rev. Brown on September 24, 1999. The letter observed that Rev. Brown had been living on the second floor of the Property and stated: "[I]t is imperative that you vacate the second floor, except for your permitted office in the front section

NOT FOR PUBLICATION

of the building, and vacate the rear of the first floor.  As you have previously been advised, at least four years ago, you must seek the appropriate approvals from the appropriate board, prior to expanding and changing the uses in the structure."  (Def. Br., Ex. L.)

On April 26, 2000, Rev. Brown submitted a Zoning Permit Application requesting to use the Property "as a church."  (Pl. Opp'n, Ex. B.)  On April 27, 2000, the City issued a Letter of Denial, stating that the "proposed use is not a permitted use in the Zone.  Your proposal would require prior approvals from the Zoning Board of Adjustment, including but not limited to a use variance, site plan approval, and parking variance."  (Id.)  The Letter of Denial further noted: "Relief may be sought by making application to the Zoning Board of Adjustment.  Appeals of the decision must be filed within 20 days.  Variance applications are available at the Planning Office."  (Id.)  Plaintiffs did not appeal this denial of their application or submit a variance application.

On October 22, 2002, the City enacted Redevelopment Ordinance, No. 47-02 (the "Redevelopment Plan" or the "Plan"), which superceded the Ordinance, and designated the Property as part of the Broadway Redevelopment Program.

### III.    Relevant Procedural History

In October 2000, plaintiffs filed an Amended Complaint against the City and the Falvo Defendants.  Plaintiffs alleged, among other claims, that the Ordinance was facially unconstitutional, that the Falvo Defendants committed legal malpractice, and that the City unjustly assessed property taxes against plaintiffs.  Plaintiffs claimed damages due to Lighthouse as $11 million and to Rev. Brown as $7,777,777.00.  (Def. Br., Ex. C.)

On April 7, 2003, this Court denied plaintiffs' requests for injunctive relief and summary judgement on its facial challenge to the Ordinance.  See  The Lighthouse Inst. for

Evangelism, Inc. v. City of Long Branch, No. 00-cv-3366 (D.N.J. Apr. 7, 2003) ("Lighthouse I"). On June 25, 2004, the Third Circuit upheld this Court's decision in Lighthouse I denying Plaintiffs' facial challenge to the Ordinance. Plaintiffs filed a Second Amended Complaint on July 26, 2004. A Final Pretrial Order was entered in this action on November 15, 2005.

On November 23, 2005, this Court rendered a summary judgment decision with respect to the Falvo Defendants. This Court held that, if a jury were to conclude that the Falvo Defendants were responsible for the failure of plaintiffs to obtain a use variance and qualify for a tax exemption, then plaintiffs' "alleged damages for the assessed real estate taxes are measurable and were actually incurred." The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, No. 00-cv-3366, at *20 (D.N.J. Nov. 23, 2005) ("Lighthouse II"). This Court also held that there was a disputed issue of material fact as to whether the Falvo Defendants' negligence caused plaintiffs to lose outside funding from the AT&T Pioneers, a group that provided and then revoked funding from the plaintiffs. Id. at *21. This Court held that "plaintiffs are not entitled to seek damages stemming from the Mission and Reverend Brown's lost income because the assumed lost profits are overly speculative and provide little to no reasonable methodology for the computation of damages as required by law." Id. at *24.

On December 13, 2005, this Court granted the Falvo Defendants' motion to remand their case to state court in Monmoth County. Defendant represents to this Court that plaintiffs and Falvo later settled the legal malpractice claim for $140,000. (Def. Br. at 41.)

On December 21, 2005, this Court entered summary judgment for the City. See The Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, No. 00-cv-3366 (D.N.J. Dec. 21, 2005) ("Lighthouse III"). The Third Circuit partially reversed Lighthouse III in its November 27, 2007 opinion. The Third Circuit held that the Ordinance violated the Equal Terms section of

NOT FOR PUBLICATION

the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") because "there is nothing in the record describing Long Branch's objectives for the Central Commercial District under the Ordinance and because it is not apparent from the allowed uses why a church would cause greater harm to regulatory objectives than an 'assembly hall' that could be used for unspecified meetings." Lighthouse, 510 F.3d 253 at 272.  The Third Circuit held that the Plan enacted on October 22, 2002 did not violate the RLUIPA.  Id. at 272.  The Third Circuit remanded this action to this Court to enter summary judgment for Plaintiffs on this issue and "to determine compensatory damages for the period between Lighthouse's application for a waiver as a church and the enactment of the Plan." Id. at 273.

### IV.  Related Litigation

#### A.  Tax Court Litigation

In a recent decision, the Tax Court of New Jersey concluded that Lighthouse was not entitled to an exemption from paying local property taxes on the Property for the year 2005. See Lighthouse Mission for Evangelism, Inc. v. Long Branch City, No. 005909-2005 (Tax Ct. of N.J., Mercer Cty, Jan. 6, 2010).  Although the Tax Court recognized that "at least some of [Lighthouse's] charitable and religious activities, such as the storage and distribution of food and clothing, and some Bible study meetings took place at the subject property," the Tax Court was "unable to determine how to apportion the building between taxable and exempt uses." Id. at 25, 27.  Additionally, the Tax Court concluded that the Property was "operated for profit" and not eligible for a tax exemption as property used for religious and/or charitable purposes.  Id. at 30.

NOT FOR PUBLICATION

### B. Eminent Domain Litigation

On April 2, 2008, the Superior Court of New Jersey, Monmouth County-Law Division authorized the City to acquire the Property by eminent domain. See City of Long Branch v. Lighthouse Mission, Inc., et. al., No. L-4778-07 (N.J. Sup. Ct. Apr. 2, 2008). Relying upon the Third Circuit's holding that the Redevelopment Plan does not violate the equal terms clause of RLUIPA, the Superior Court dismissed Lighthouse's RLUIPA claim that challenged the City's condemnation authority.

## STANDARD OF REVIEW

The RLUIPA does not explicitly provide for a damages remedy. Rather, it provides for "appropriate relief" against "a government." 42 U.S.C. § 2000cc-2(a). Although "some courts have questioned whether Congress intended to permit only injunctive relief" under the RLUIPA, Perkins v. Booker, No. 2:08-cv-97, 2009 U.S. Dist. LEXIS 64092, at *12 (W.D. Mich. May 29, 2002), most courts hold that damages are an available remedy under the statute. See, e.g., Chase v. City of Portsmouth, 428 F. Supp. 2d 487, 490 (E.D. Va. 2006) (stating that it is "well-settled" that damages can be found against a defendant city under the RLUIPA); Lighthouse Cmty. Church of God v. City of Southfield, No. 05-cv-40220, 2007 U.S. Dist. LEXIS 15973, at *9 (E.D. Mich. Mar. 7, 2007) (finding that the plaintiff could pursue damages against the defendant city under the RLUIPA).

The Third Circuit has instructed this Court to determine compensatory damages in this matter, and the Court will treat an award of monetary damages as "appropriate relief" under the RLUIPA. To collect damages, plaintiffs must show that defendant's RLUIPA violation caused them proximate harm. Lighthouse Cmty, 2007 U.S. Dist. LEXIS 15973, at *10. The

"nature and amount of damages proximately caused by [the RLUIPA violation] is a matter for plaintiff[s] to prove at trial." Id.

## DISCUSSION

**I.      Relevant Time Period for Computation of Damages**

The Third Circuit ordered this Court to determine compensatory damages "for the period between Lighthouse's application for waiver as a church and the enactment of the Plan." Plaintiffs argue that the beginning of this date range is August 1, 1995. Defendant contends that the date range begins on April 26, 2000. The parties agree that the end of the date range is October 22, 2002, which is the date that the Redevelopment Plan was enacted.

The Court finds that April 26, 2000 is the proper start date. The Third Circuit stated: "Between 1995 and 2000, Lighthouse attempted to obtain permission from Long Branch to employ the Property for a number of uses, including as a soup kitchen, a job skills training program, and a residence for Rev. Brown, but the use was denied in each case because the application was incomplete or because the requested use was not permitted." Lighthouse, 510 F.2d at 257. By contrast, the Third Circuit stated that, "[o]n April 26, 2000, Lighthouse submitted an application for a zoning permit to use the Property as a church." Lighthouse, 510 F.2d at 257 (emphasis added). Because the Third Circuit instructed the date range for damages to begin on the day that Lighthouse submitted an application for a waiver to use the Property as a church, the date that Lighthouse applied to use the Property as a church – April 26, 2000 – is the date that the Third Circuit intended this Court to use for the computation of damages.

Moreover, the Court finds that it is reasonable to use April 26, 2000 as the start date. Lighthouse's August 1, 1995 Application for Development (which did not request use as a church) was rejected on the grounds that it was procedurally deficient, whereas Lighthouse's

April 2000 application was rejected on the grounds that the proposed use as a church was an improper use of the Property. It is more reasonable to use the date on which Lighthouse's application was rejected on substantive grounds (on the basis of the Ordinance later determined to be unlawful), rather than the date on which it was rejected due to unrelated procedural infirmities.

## II.     Availability of Damages Generally

Defendant argues that Plaintiffs are not entitled to receive any damages and that the Third Circuit's holding does not demand otherwise. Defendant argues that Lighthouse is judicially estopped from arguing that it could not operate as a church from April 2000 to October 2002 because Lighthouse asserted the contrary position in the Tax Court Litigation. Defendant also contends that Lighthouse was never capable of operating as a church or conducting a religious ceremony. Additionally, defendant argues that Lighthouse cannot recover any damages because it could have prevented its alleged damages by applying for a variance as to the C-1 Ordinance or by appealing the City's denial of its April 26, 2000 Zoning Permit Application.

The Court rejects defendant's argument that plaintiffs cannot recover any damages. The Court finds that defendant cannot prevail on its judicial estoppel argument because, to prevail on an argument for judicial estoppel, one party must show that the other party has, in an earlier proceeding, asserted a position inconsistent with their current position, and that it did so "with intent to play fast and loose with the court." McNemar v. Disney Store, 91 F.3d 610, 617 (3d Cir. 1996). The Court notes that, in the Tax Court Litigation, counsel for Lighthouse stated that the Property "has not been used for assembly for church services" (Def. Br., Ex. F, p.7 (00016:4-5)), which is consistent with Lighthouse's current position. Additionally, the Court finds that whether Lighthouse was capable of operating as a church, and whether Lighthouse could have mitigated its

NOT FOR PUBLICATION

damages by applying for a variance or appealing the City's denial of its Zoning Permit Application, are questions of fact for a jury to decide.

### III. Types of Available Damages

#### A. Real Estate Taxes

The Court follows its earlier ruling that assessed (and actually paid) real estate taxes are "measurable" damages. Plaintiffs may submit to a jury evidence that, as a result of the City's RLUIPA violation, it actually paid such taxes during the operative time period of April 26, 2000 to October 22, 2002. Plaintiffs may also submit evidence that they incurred attorneys' fees in connection with the payment of those taxes. Defendant can present evidence to the jury seeking to demonstrate that all or part of the fault for the assessed real estate taxes is attributable to the Falvo Defendants' malpractice and not due to the City's RLUIPA violation. Defendant can also put to the jury that Lighthouse was physically incapable of establishing itself as a "church" and gaining a tax exemption even if its request to use the Property as a church had been granted.

#### B. Damages From Loss of Funding

In Lighthouse II, this Court found that it was a question of material fact as to whether the Falvo Defendants' negligence contributed to the revocation of the Pioneers' funding. Similarly here, plaintiffs may submit to the jury evidence that they may possess demonstrating that the City's RLUIPA violation was the proximate cause of their losing funding for Lighthouse during the operative time frame of April 26, 2000 to October 22, 2002.

NOT FOR PUBLICATION

  **C. Civil Rights Damages Against Long Branch**

  Some courts have noted that one "significant" distinction between Section 1983 and RLUIPA is that Section 1983 "explicitly provides for an award of monetary relief." Daker v. Ferrero, 475 F. Supp. 2d 1325, 1337 (N.D. Ga. 2007). But plaintiffs can seek damages under RLUIPA in this action, so this distinction is not overtly relevant. The Court will use principles generally applied to determine civil rights damages in Section 1983 actions to determine the propriety of civil rights damages here.

  In Section 1983 actions, where it is determined that a party's constitutional rights were violated, a plaintiff seeking "substantial damages should be awarded only to compensate actual injury." Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 1994). Otherwise, nominal damages may be appropriate to vindicate a party's rights. In Section 1983 actions, "damages for violations of constitutional rights 'may include not only out-of-pocket loss and other monetary harms, but also such injuries as impediment of reputation . . . , personal humiliation, and mental anguish and suffering.'" Id. at 454 (quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986)). "However, a Plaintiff may not recover compensatory damages for such injury 'without proof that such injury actually was caused.'" Glass v. Snellbaker, No. 05-cv-1971, 2008 U.S. Dist. LEXIS 71241, at *70-71 (D.N.J. Sept. 17, 2008) (quoting Carey v. Piphus, 435 U.S. 247, 264 (1978)). The Glass court examined verdicts rendered for emotional harm in Section 1983 cases where discrimination was not alleged and found that in cases where damages in excess of $50,000 were awarded, the plaintiff "suffered prolonged physical symptoms, or sought psychological or medical assistance." Glass, 2008 U.S. Dist. 71241, at *77 (internal citations omitted).

NOT FOR PUBLICATION

The Court will permit plaintiffs to present evidence to the jury showing that they suffered actual harm, including emotional harm, as a result of the City's RLUIPA violation during the operative time frame.

### D. Lost Income

This Court has held that "plaintiffs are not entitled to seek damages stemming from the Mission and Revered Brown's lost income because the assumed lost profits are overly speculative and provide little to no reasonable methodology for the computation of damages as required by law." Lighthouse II, at *24. The Court continues to hold that plaintiffs cannot recover any compensatory damages for lost income in this action.

### E. Costs, Attorneys' Fees, and Tax Consequences

Plaintiffs have stated their intention to move to recover costs, attorneys fees, and tax consequences because they obtained summary judgment against Long Branch. Plaintiffs acknowledge that "these awards are beyond the province of the jury, and are within the exclusive realm of the Court via post-trial motions." (Pl. Opp'n at 14 (citing Grubbs v. Knoll, 376 N.J. Super. 420, 433 (App. Div. 2005).) The Court need not evaluate the propriety of these awards at this pre-trial stage.

## IV. Apportionment of Damages

Defendant states that plaintiffs recovered $140,000 from the Falvo Defendants and that "any damages calculation against the city should be reduced by the settlement amount of $140,000." (Def. Br. at 41.) Plaintiffs counter that, "[w]ith respect to the effect of the Falvo settlement, Long Branch is not entitled to a straight settlement credit, but rather Long Branch has the burden of proving Falvo's percentage of fault to the jury." (Pl. Opp'n at 10 n.2.)

NOT FOR PUBLICATION

Under New Jersey's Comparative Negligence Act, N.J.S.A. 2A:15-5.1-5.3, joint tortfeasors bear liability "on the basis of proportion of fault as determined by the trier of fact." Dunn v. Praiss, 139 N.J. 564, 576 (1995). Where one defendant settles before trial, the burden is on the non-settling defendants to provide "some proof of a settling defendant's fault or negligence . . . to include that defendant on the verdict sheet for fault-apportionment purposes." O'Brien (Newark) Cogeneration, Inc. v. Hawker-Siddeley Power Eng'g, Inc., No. A-1219-05T5, 2007 N.J. Super. Unpub. LEXIS 363, at *17 (App. Div. May 2, 2007). However, "'the quantum of evidence required to qualify for an apportionment charge is low.' Thus, even weak evidence will suffice to support such inclusion on the verdict sheet." O'Brien, 2007 N.J. Super. Unpub LEXIS 363, at *17 (quoting Boryszewski v. Burke, 380 N.J. Super. 361, 384 (App. Div. 2005)).

The City will need to put evidence before the jury that the settling Falvo Defendants bore a certain percentage of fault. The appropriate allocation of fault is a determination for the jury to make.

## CONCLUSION

Defendant's motion for summary judgment is denied. The Court finds that the operative time period for damages is April 26, 2000 to October 22, 2002. Plaintiffs may submit evidence to a jury of paid real estate taxes on the Property and associated lawyers' fees, loss of funding, and civil rights damages during the relevant time period. Defendant may submit evidence to a jury that all or part of any of these damages should be allocated to Plaintiff's own fault or the fault of the settling Defendants.

April 13, 2010                                    s/ William H. Walls
                                                  United States Senior District Judge